All rise. This call resumes its session. Please be seated. All right. Thank you for your patience with our break and good morning and welcome back. So now we have three cases that are being heard for argument at the same time and we have five attorneys who are going to be arguing. So this is how I think it's going to happen and counsel you can correct me and make sure we allocate this in the proper order. So I believe Mr. Cohen is going to argue first and he has 10 minutes and may reserve a minute for rebuttal and then Ms. Singh will go second and she has 15 minutes but may reserve five minutes of that for rebuttal and we'll give you separate clocks so you're not just on a 25 minute clock you're going to separate this out so your time will end and then Ms. Singh will get her time. Then I believe Mr. Hinke is going to argue and he okay so Ms. Turdif is going to be the next one okay and she has 10 minutes then Mr. Hinke for 10 minutes and then Mr. Fates for five minutes and then if Mr. Cohen and Ms. Singh have in fact kept some time for rebuttal we'll circle back up for their rebuttal. That's how you all foresee this playing out. All right. Well we could this is a way that the clerk just laid out to me that you all had requested to do this so now it sounds as if you're missing you're suggesting something different and I don't know the others are on board with that or not I don't want to just change the procedure at the last minute so we have a plan we've read all your briefing we can sort this out so my concern is to make sure you each get your allocated time and that's why you're on separate clocks but we can jump from case to case as we as we need to. Okay so what you're suggesting Mr. Cohen is you would argue first who would then and who would respond Ms. Charda and does Ms. Charda is she only responding to you is she responding in other arguments only okay so Mr. Cohen would have 10 minutes possibly one minute reserved for rebuttal then Ms. Chardoff is going to argue for 10 minutes then Mr. Cohen's rebuttal that's what you're proposing then we would move to Ms. Singh with 15 minutes five possibly for rebuttal then Mr. Hinke and Mr. Fates both taking their time to answer and then returning to Ms. Singh for her rebuttal all right is everybody on board with that okay all right then let's let's start with Mr. Cohen. That was the most difficult part if I'm the one may please the court I'm appearing on behalf of Ovation Fund Management an investment company Ovation challenges a ruling in the Receivership Action that bars the company from pursuing fraud claims in the state court against a Pelley-Nassiman law firm that advised Ovation that it was safe to invest in a company that it turned out was operating a Ponzi scheme. While Ovation's investment fund recouped its investment from one of the Ponzi participants Chicago Title, Ovation itself lost 35 million dollars in management fees when unrelated in-vet clients withdrew their money from other funds that Ovation was managing and it's Ovation's state court action which has been enjoined seeks to recover those funds from Nassiman. Now if I understand correctly Nassiman's position is that it should be immune from liability for its fraudulent conduct even though Ovation's claim was not an asset of the Receivership and even though a judgment against Nassiman would not have to be paid out of funds that the Receivership is collecting on behalf of defrauded investments. As a matter of law your honor that position lacks merit and the reason is that in Receivership actions courts do not have authority to bar third-party claims like Ovation's if they are claims the Receiver him or herself in this case herself could not have pursued and if the funds and if a lawsuit the state action seeks funds the Receivership is does not seek funds the Receivership could distribute on behalf of defrauded investors. In this case the simple and dispositive fact is that the Receiver could not have pursued a claim to recover Ovation's lost management fees only Ovation has standing to pursue that claim and if Ovation is successful in that claim and recovers those management fees those fees would not be shared with defrauded investors because they are not proceeds of the Ponzi scheme. It seems to me the question here is whether if Ovation was successful and got some sort of recovery from Nassiman could Nassiman turn to ANI or the Receiver standing in the shoes of ANI and try to recover for the amount it had to pay Ovation. Right. And is there a possibility of that happening? No there's no possibility because under California law that sort of indemnity action would be barred by 11 U.S.C. section 524E which provides that well that's not California law Wait a minute. And if you're talking about indemnity. I've come to the wrong tab. I apologize. I was actually referring to Code of Civil Procedure section 875D which provides there should be no right of contribution in favor of any tortfeasor who has intentionally injured the and who has intentionally injured the injured party. So my understanding is that the allegations that Ovation has made also encompass negligence which is lesser than intentional and so that wouldn't trigger that provision of California law. Yes two responses to that your honor. First the negligence in in order to prove negligent misrepresentation it's not just negligence but misrepresentation it includes an element of an intent an intent to deuce reliance on facts one has no reason to believe are true. So that we believe that section 875D would apply to that as well. But more to the honor if the negligence representation claim would open the door to an indemnity action in your honor's view Ovation would be willing to dispense with that claim and proceed only with its fraud claims. How do we deal with that now in dealing with this appeal? I mean we we sort of take the litigation as it exists and try to figure out basically is there a way for fingers to reach back to the receivership pot of money. And if we conclude that there is the possibility for that to exist how would we imagine this case to be something other than what it actually is right now? I think the court can take a representation by counsel that that claim is no longer will no longer be part of the case and accept that as the current record of the appeal. But the court can also treat under look under the the term negligence at the more operative term misrepresentation and conclude as we explained in the brief that this really does include an intent element. If you look at the allegations in the complaint that spell out exactly what that claim consists of it's one intentional act after another. And we think that would bring into operation the prohibition against indemnity claims by one intentional tortfeasor against another. I might say that in respect to that principle there was a California case a court of appeal case in 1993 the Baird case that my opponent relies on that said one intentional tortfeasor could pursue a claim against another. But in our view that claim that that rule has been first of all it's a dubious validity given a section 875d. But more to the point it's inconsistent with the U.S. Supreme Court's decision in the B.B. versus County of L.A. case which makes quite clear that an intentional tortfeasor under no circumstances can reduce its liability by a proportionate share of fault. While that case involved prop 51 which limits non-economic damages claims each party is liable only for its percentage of share. The court said that an intentional tortfeasor could not reduce its share of liability for non-economic damages because the whole history of comparative fault in California on which prop 51 was based does not include intentional tortfeasors. And we submit that were the California Supreme Court to address that issue it would endorse that position it would reject the position that the court of appeal adopted in Baird. We think the dissenting opinion in Baird presents a more cogent argument and explanation. As far as the negligence claim your honor as we say we believe you can deal with the court can deal with that in several ways. One is to look at what the actual allegations of the negligent misrepresentation claim are which do allege intentional misconduct by the Nassiman firm. Not only in connection with the way that claim is defined in the Casey instructions. Let's see it's Casey 1903. Makes clear that one has to prove an intent to induce reliance on facts one does not believe that's an intentional tort. It is a form of misrepresentation and I might add that my opponents point out that that claim is probably barred as a matter of law by the statute of limitations. You're using words like probably but that still will require the the executor or the administrator to litigate the issue potentially. As far as your honors could you know could write an opinion that said yes the only claim that can can be barred is a negligence claim at which point ovation would be free to drop that claim and then proceed with whatever instructions this court provides in the remainder of its opinion. That would be a way to address it without overturning the you know without endorsing the entire bar order. Which is a lot indicate that we have to go or that the district court had to go claim by claim as opposed to action. I mean the district court's order seems to go action by action and decide if there's something in this action that could trigger the the receivership assets or as Judge Ebell just talked about the requirement to litigate to assert the receiver's interests. Well the the district court found that both claims could proceed. It found that under Baird the fraud claim could proceed and because there was negligence alleged as an aspect of a negligent misrepresentation that claim could proceed. So it did analyze it on a claim by claim basis. I see my one minute of rebuttal will be exhausted unless your honors would like to ask further questions on those points. I'll reserve whatever remaining time I have. All right thank you. Thank you. So now we have Ms. Chardoff for 10 minutes. Thank you your honors. Hannah Chardoff on behalf of Nassiman and Marco Costales. Ovation claims that its litigation against Nassiman including its attempt to undo this bar order will have no impact on the receivership or any investors. That is wrong. If Ovation is to proceed with its litigation against Nassiman the receivership entities would face claims for contribution and indemnity which are different things which would be costly and time-consuming. As of the receiver's last status report there's nine million dollars remaining in the estate that is being held for these litigation risks. The receiver recognized in her business judgment that there is a risk of contribution and indemnity claims from Nassiman and that is on that basis and the exercise of her business judgment that she settled with Nassiman and requested the district court to enter the bar order in this case and the district court granted that bar order finding that it was necessary to protect the res. This court reviews those findings for an abuse of discretion and should therefore affirm. I want to talk first today about the claim that Mr. Cohen just made that the negligent misrepresentation claims would be barred by 875D. I have not seen any case holding applying 875D to any negligent misrepresentation claims and it's important to note that the text of 875D says that the injury must be intentional not the intent to reduce reliance. One can make completely truthful statements and intend for someone to rely on them and there's no intent to injure inherent there but even if this court were to find that 875D applied it does not address the intentional tort claims as the panel already recognized. It also says nothing about the claims for potential for Nassiman to raise indemnity claims against the receivership estate and while Mr. Cohen addressed barred he did not address at all this court's binding decision in First Alliance which finds that an intentional tort feaser may seek indemnity from another intentional tort feaser. This court adopted the California Court of Appeals decision in Baird and it would not be able to make an alternative finding in this case without going en banc to overturn First Alliance. I'm not sure that's entirely correct because you know of our case law that if there's intervening higher authority that is clearly irreconcilable then we don't have to take something en banc and that is typically in the context of federal case law under Miller v. Gamme but also when the state law has changed so we wouldn't be bound by a panel decision if it is in fact that the California Supreme Court would not follow Baird if that's been made clear. We just published an opinion on this within the last week when the state law changes from the time that a Ninth Circuit panel has addressed it then that's intervening authority. That's a fair point Judge Beatty but BB is not intervening authority in this case for two reasons. One it's about a different statute it's not about 875d and two it's not about an intentional tort visa trying to get indemnity from another intentional tort visa. It is again about a situation in which an intentional tort visa was trying to offset its claim based on the negligence of another tort visa and that's exactly what was laid out in in all of the other authority that Ovation cites in its opening briefs that it is a the Allen case etc. Baird is Baird and First Alliance are the only cases in that anyone has cited in this case that involve an intentional tort visa trying to offset its claims against another intentional tort visa or by seeking indemnification from another intentional tort visa and there's no doubt that that's the case. So it's your position that even with the may seek indemnification from another one at a discretionary level. I mean the court's not bound to it but but that that's a claim that could be made. Yeah yes Judge Bell that under California law there is no inherent legal bar to an intentional tort visa seeking indemnification from another intentional tort visa and I think again it's important to remember that this legal question is pretty deeply buried in the abuse of discretion standard here as the panel already recognized the receiver if would need to litigate this issue and there would be litigation costs to trying to defend against indemnity action by Nassiman in this case and that is the same kind of analysis that courts have considered for example in the Stanford International Bank cases in Lloyd's the court explicitly distinguished the Lloyd's bar order from the Coletta bar order in another earlier unpublished Fifth Circuit case to note that when the party who's getting the bar order the Nassiman party equivalent party in this case if that party is a potential co-defendant of the receivership entity who might try to seek indemnification from the receivership entity that that is a basis to uphold a bar order and a reasonable consideration for the district court to make when entering a bar order in this case. I also want to discuss briefly Ovation's position that this claim is distinct it is not distinct from the claims that it already settled they are based on the same representations they flow directly from the Ponzi scheme the damages are different certainly these are out-of-pocket damages versus consequential damages that Ovation is now seeking to recover but that doesn't make the claim different and trying to phrase it frame this as a different claim is exactly the kind of word play that the Fifth Circuit in the Sanford International Bank cases rejected as a basis for finding that a district court abused its discretion in that way and every investor is likely to have consequential damages from losing money in a Ponzi scheme so this doesn't make Ovation unique in any sense of the word it like many other investors lost money in what turned out to be a Ponzi scheme it has those direct investment losses and it also has additional consequential damages and the receiver as this court has held in both the Smith v. Arthur Anderson case and the Mosier case has to bring litigation against against people who are alleged to have been participants in the Ponzi scheme and I want to make very clear that at this point these are unproven allegations Nausman strongly contests the truth of those allegations and any facts but even assuming that the allegations are true for purposes of this analysis this kind of bar order is exactly the kind of bar order that the Fifth Circuit in the Sanford International Bank cases found was appropriate to uphold and the parties seem to agree that the Fifth Circuit and the Tenth Circuit's de Young decision are really the governing authority and the most persuasive standard that this court should also apply these are investors seeking to bring litigation against people who are alleged to have participated in a Ponzi scheme for losses that flow directly from their Ponzi scheme losses and it's appropriate for the court to uphold is appropriate for the district court to issue a bar order in this case again based on the receiver's business judgment that this was the most appropriate way to resolve her claims and this court should not find that it's abuse of discretion in that case panel has no further questions all right thank you very much all right mr cohen you have a little over a minute you have a minute and four seconds question is can i make three points in one minute we shall see uh first uh bb um does is inconsistent with alliance and uh contrary to opposing counsel's representation bb does cite section 875 uh noting that uh it's notable that prop 51 did not mention that statute which has established the right of contribution in tort actions and expressly denied that right to intentional tort features so i think if you look at bb uh you will conclude that it does overrule this court's reliance on uh baird um as far as whether an indemnity claim would be costly um even if a indemnity claim were permissible uh it's ba it's a claim that's based on equity um and under the munio's california court of appeal case if a claim lacks equity it can be disposed of on a demur uh so there's really no we're not talking about a trial we're talking about a claim that uh that would be inequitable for the very reasons the receiver argued below when they opposed to um just because it's an equity doesn't mean you wouldn't take evidence on the issue wouldn't take evidence i think that the evidence has been developed that well maybe maybe not from your point yes maybe maybe not from the other side well yes but your honor but if there is no merit you have little time go ahead the last point um in terms of whether the claim is derivative i think the best way to analyze that question is could a could ovation file a claim with the receiver to recover its uh lost management fees which bear no relationship and not you know to uh to investments that were lost by defrauded parties clearly it could not make that claim uh the reason derivative claims can be barred is because they should be made before the receiver and the equity court can then decide who among the defrauded parties gets the was recouped this is a business loss completely unrelated to any investments the company made so i'll defer i mean i'll respond respond with those points and uh and uh submit to your honors thank you so now we're going to turn to miss sing and you have 15 minutes you've indicated you'd like to reserve five minutes for rebuttal so keep uh your eye on the clock and please go ahead good morning rupa sing for the peterson appellants mr peterson is here today and both of us thank you for the opportunity to be heard i will reserve five minutes for rebuttal there are three compelling reasons why this court should reverse the bar order number one because the claims of the peterson appellants are non-derivative and independent number two because they do not affect the receivership rate and number three because the bar order is inequitable i'm going to address these points in order the number one um reason why the claims are different non-derivative independent is because the receiver said so in multiple pleadings and repeatedly said these claims are different from the ones that are already pending in state court not only the claims but the damages as well and it was successful in that position therefore the receiver is not stopped from saying exactly to the contrary that the claims are related but aren't these claims based on investments in the scheme right they are right and that's exactly what the investors claims would be they're all making the same claims for the investments in the scheme that not exactly your honor so if you look at the stanford international bank case which has also been referred to as a lloyd's case the case the court they're distinguished the fifth circuit they're distinguished two types of claims there claims that we bring brought against the underwriters and dno policies and the employees and the officers were going to seek indemnification under the same policy proceeds and so the fifth circuit said those claims could conceivably be barred if those parties have a right to distribution participate in the distribution but the extra contractual tort claims and statutory claims against the same underwriters for the same injury writing on the same transaction were not going to be related and derivative because they were bad faith denial of coverage claims they were not going to come out of the policy proceeds but that's not what we have here well you know we don't have like a malpractice claim a bad faith claim we don't have any of that we have claims for people being duped into fraudulent investments and and what i understood your briefing to suggest was that there was something that was that was different because of some loan documents between the peterson funding entities and a and i or not a and i excuse me the investors but it was so unclear so what what those loans were and what it meant that would peterson have any liability based on those loan documents that would be different from the investment liability right and so let me address those two points um there are two types of claims at least that i want to give as an example one of those is the guarantees so unlike any other participant in this fraud who was defrauded the peterson appellants mr peterson and his trust personally in the trust guaranteed 100 million dollars of loans that were then used to fund the what turned out to be the fraud those personal guarantees are not exhausted by the memo settlements that the money in money out settlements that anybody ever sued them or tried to sue there was an action pending by bank of california chicago title settled that and got so the answer that is no how about the other one um there are tolling agreements there are seven tolling agreements with seven parties for millions of dollars on the loans that have been guaranteed and those parties are well are going to sue the peterson andes as soon as those tolling agreements the the condition is for the litigation the state court litigation that has just now been to be resolved and so it was peterson filed a claim in the receivership for liabilities it might incur through the guarantee um i believe he did and it was rejected so that's wrapped up in the receivership well just because you made a claim for that doesn't mean that it wasn't different the injury is that all you're entitled to is to file a claim you're not entitled to win the claim understood but in trying to determine whether the claim is derivative or independent what you look at is where is the injury coming from the injury is that unlike any other investor there are personal guarantees can that can now be sued on that the receiver lacked standing to break the receiver could never sue on behalf of the peterson appellants for loans sorry cautionary about this derivative independent as far as i could tell that language is not statutory it's not in the case law it's kind of come from a fifth circuit case and it seems to me that that is confusing language that when you look at the the truth of it there is nothing being dependent or derivative it is is it a claim against the assets of the estate and is it part of would the ponzi scheme have affected so i think that particular language may have us going a bit down a unhelpful alley well if it helps the other way to look at it is that um it's not targeting the same rate of the receivership estates so the case law is pretty clear that that uh you can have different kinds of damages and still you will fall within the receivership but for example with respect to lloyd's decision whether it's targeting the same policy proceeds that the receiver was whereas it was bad faith denial that is not policy proceeds that's the array of the what belongs to the receivership so let's play out the peterson appellants state court claims and see if it would ever come to the receivership if the peterson appellants succeed in suing chicago title and saying that you owe us for the money that we guaranteed that money turns around and goes to those guaranteed lenders if the peterson appellants fail in that claim that money stays with chicago title in no event does that money ever become part of the receivership estates way and that's a helpful way to look at why the claims are unrelated and non-derivative well even if that's true though if chicago title ends up having to pay and turns around to a and i are the receiver and says i had to pay and you should share and the liability i had to pay then we've got the res triggered again well the the the issue of the indemnity which i think you're asking just first is there's in every case the through line for california cases baird laco bb king is that if indemnification is against public policy we will not allow it so that's gonna have to be litigated that's not a given that's not a facial we understand what the answer is going to be it's a litigated question well i to the extent it's litigated it's litigated on the pleadings and let me explain why because in every one of those cases you have joint tort feasors who owe joint and several liability to the plaintiffs right they have to pay and then they fight out who gets to contribute and who gets to fund that payment unlike that situation a receiver's only way is the assets that it has collected for distribution to the victims so what we are saying here is a tort fees are like chicago title could sue the receiver and take funds that have been sitting there collected for compensation to investors cut in line and say before you pay those victims you pay me and that is against public policy and that's something that is not needed to be developed in evidence that's not a trial issue that is an issue that can be litigated on the pleadings and it's certainly not going to take nine million dollars and even if it is here's another kicker the receivership is essentially insolvent chicago title claims that it's releasing 100 million dollars worth of claims against the peterson appellants the receivership has just said that it has nine million dollars in assets what incentive does chicago title have to sue an essentially insolvent court fee or you know receiver and that's it's not whether it can or cannot but it's ephemeral it's speculative it makes no sense for chicago title to say we're going to sue a receiver who has nine million dollars for 100 million dollars worth of liability it just doesn't make any sense this isn't directly responsive but it's related uh uh what should we make if anything of the uh suggestions that uh that peterson was an insider insider in a securities law has a very particular meaning and peterson doesn't seem to meet that in that context but in receivership context here the court is using it more broadly and i must say i've i've just been confused in in this case what if anything to do with the reference to being an insider as well you should be your honor because there was no adjudication of mr peterson's insider status all that was done was there were allegations being litigated though a little bit isn't there a case still to litigate that there was no opportunity to litigate that i think there is a case pending still right might decide that question exactly and that has not been decided that is a case in which the receiver has alleged that the peterson appellants were insiders it's the clawback action it's pending for the same district court judge it's the same action in which the receiver has now taken an assigned claim from cal private is also suing on that guarantee note so to your point of whether that note is going to come those guarantees are going to come back and haunt the peterson appellants they are because they currently are being brought by the receiver but the point is there was no adjudication in the receivership action about mr peterson's alleged insider status in fact the district court in its distribution order stated notwithstanding peterson ignorance and ignorance of the fraud he's an insider because of his business relationships his compensation structure his personal relationships but what that essentially means is business relationships if you don't know that it's a fraud and you sign a contract with somebody are you saying that somebody on the other side of a contract can't be defrauded it wasn't the district court the district court wasn't saying as you've just quoted from the order that mr peterson had knowledge of the fraud but rather that his relationship to the scheme was different than other investors he was more intimately involved he owned a percentage of he had a voting share he you know he he could um recruited about 65 percent of the investments that were lost i mean he he was different from other investors and i think that the the point is that being different doesn't make you um a tort feeder doesn't make you an insider you can if you don't know about the fraud and you have a 50 percent interest in what turns out to be a fraudulent wasn't the district court just making an equitable point that it's fair to treat somebody who is an insider and more intimately involved in this scheme differently than other innocent investors who had no involvement whatsoever other than writing a check if it was then it wasn't following the applicable case law well except that except that if if that is what happened here we do have to give deference to the receiver well there are two things and so receivers got quite a substantial latitude and so if that's the articulation by the receiver we've got to give an awful lot of latitude to that but every case that says that the receiver and the equity receivership court has latitude also says that it's not unbridled and there one one point to keep in mind is the district court never issued the bar order based on mr peterson's alleged insider status the bar order was issued only because of the claims being related the and the threat of indemnity it was only for the first time on appeal that chicago title argued that that reason which was the reason to issue deny the claims in the distribution order should be bootstrapped as another reason to affirm the barter and if you do that then what you're doing is you are prejudging the claims that are pending against mr peterson in the clawback action you are saying we have decided that he's a court-torn feaser and that's the reason to deny the bar order because the only relevance is that indemnity could be indemnity actions could be filed assuming my public policy argument fails so that's a problem with that equitable argument there's also the problem that none of the cases allow this type of an adjudication in a summary proceeding you look at that merrill scott case there was live testimony that was presented about an early investor there was sec presented documentary and other evidence showing that he had set up offshore accounts perhaps some of this conduct followed the sec's lawsuit but the point was there was an evidentiary hearing then there was the buyer's case in which the people who were insider or be insiders who denied knowledge of the fraud were people who were found to have actively actively participated in the development and the marketing of the scheme not the business relationships the scheme and here we have record evidence to the contrary we have gina champion came the mastermind of the ponzi scheme stating on the record in her deposition in taken by chicago that mr pearson did not know about the fraud to the end so if you're making an equitable inference that this is somebody different take all of the evidence they count there's not a single case in which this determination has been made without an adjudication and evidentiary hearing certainly not on these facts and not on this evidence i want to reserve my time for rebuttal before you sit down i want to ask you you've talked mostly about the bar order and a little bit about the distribution order but um with regard to the distribution order how do we have a jurisdiction over an appeal of that order and how is that even a final order i mean it's final because it's a denial of claims um well it's an interim order in the sense that the receivership is ongoing and i think that the receiver still retains authority to make changes to the distribution order if it deems necessary i i'm sorry that i don't see it that way because essentially it's it's akin to judgment being entered against a party um in a multi-party action as with respect to the peterson appellants there's no avenue for them to resubmit their claims to seek some the receiver could unilaterally change his mind but that's the same as a party against whom judgment has been entered settling out of court that does not make the order non-appealable now to the extent that there's an issue of equitable mootness because the distributions have been made we will point out that that's not a fault of mr peterson or the appellants who saw stays at the district court and at the ninth circuit level to avoid this very fact from happening but to the extent that there's a problem with being able to either take jurisdiction of the distribution order appeal or reverse it because of equitable mootness even stronger reason even more important that this the borrower i'd like to reserve my time for rebuttal if i have any um you're actually out of time but i think at the point you indicated you wanted to reserve time you had about a minute 15 so i'll give you that thank you so much uh this is mr hink hinky uh your honor it's kind of like except i missed okay so how do you say it hanky hanky okay and you have 10 minutes thanks very much um i think the central thing here is what is the bar order doing and what the bar orders orders are doing is protecting the receivership estate from claims that's part of the receiver's to do that to protect it i think if you look at the the young case it got it exactly right because it says i'm going to paraphrase um and most importantly first utah had a right to indemnification the indemnification provision could force the receiver to indemnify first utah for claims brought against it that would reduce the receivership of state that was the most important reason the court in 10th circuit and de young said we should impose this bar order and we submit that the situation here is the same the bar orders are protecting the receivership estate from claims and that's what they're supposed to do that's what they're doing here now the other side says well there's no equitable indemnity claim here so there's really no protection to the estate but there's several problems with that the first is nobody has ever determined that chicago title was an intentional tortfeasor so the basis of the other side's argument your intentional tortfeasor you can't get equitable indemnity hasn't been that would have to be litigated at great expense the great delay great cost in the case if there wasn't a bar order second the our opponents say well the law really is that intentional tort claims are barred by this california statute in fact if you listen to what they said and if you look at their briefing they have a very complicated theory as to why an intentional tortfeasor cannot get equitable indemnity that would have to be litigated they have nothing that says flat out no you can't do this there are cases that you can argue about and what their implications are and so on and they have a an argument like that but that would all have to litigated out and even if none of that was true there's the point that the claims some of the claims are negligent claims they can't possibly be barred by this statute they are not even arguably barred by this statute now the other side says oh okay i'll drop well that's that's too late they missed the boat on that if they wanted to drop them they should have dropped them long ago we're here with what they did and what they said and what they sought below and they sought recovery of negligent misrepresentation claims and so for that reason their argument that there cannot be equitable indemnity also fails even if all that wasn't true the fact of the matter is if we're going to litigate all these things about equitable indemnity whether chicago title was an intentional tort fees or whether or not the law is intentional and tort fees cannot get equitable indemnity whether the negligent misrepresentation claims are not barred in any event what happens there's the expense to the receivership estate there is the delay and it's not just the delay of uh the litigation as such but it's you as a receiver you can't then distribute the money you can't wrap up the state a state you can't move forward you have to go over and do all these things before you can get there and so even if the other side was right that there is no equitable indemnity claim the receiver could reasonably say in his her discretion well wait a second i need to get this thing moving i need to get it done i'm gonna do this i'm gonna cut the best deal i can and i'm gonna move on and that's what happened here your honor i think that really is the answer to this case that the receiver is protecting race the receivership estate from claims of others and that's what the claims were here what are peterson says well i could be held liable for investor claims what the party's called money in money out of claims is there a lawsuit against him for that no what does he say here today he says they're tolling agreements there's nothing in the record of any tolling agreement there's no showing that those exist so they can't rely on that the that's interesting you're representing that there's nothing in the record before we are limited there's nothing in the record indicating whether or not there are independent claims against peterson right no no not independent claims the tolling agreements there's that we our position is those the investor claims have been paid off and it's too late to if even if they hadn't been paid off their argument is oh no it's not too late people could bring those because they're tolling agreements our position is there's nothing in the record that shows these tolling agreements exist i appreciate that thank you and so those claims are all by the board so what else is there well the receiver settled with one of the investors called cal private bank and cal private bank assigned to the receiver its claims against peterson and the receiver is pursuing those claims but those are all part of the ponzi scheme i take your point that this language about derivative independent is a little fuzzy and it's hard to know what the cases really mean and to make a lot it really just comes out of one circuit right you know it sounds good until you start thinking about it but anyway you look at the claims here the receiver's claims against peterson which he wants to then turn around and sue chicago title over and then chicago title is going to end up suing the receiver those are investor claims that's the heart of this this is about a ponzi scheme on the investors they couldn't be any more part of the receivership estate than anything here and so there's nothing we don't have to decide derivative dependent or anything else they are the claims at the heart of the ponzi scheme that the receiver is now pursuing against peterson and he wants to say oh i want to turn around shoot chicago title and say no no it's really their fault but this these are claims that are at the heart of the case the ponzi scheme and those are the kinds of claims that the receiver is entitled to deal with in the receiver's reasonable discretion if the receivership court approves it which is what happened here the receivership court said yes this makes sense it's in the best interest of the estate and everybody who has a claim to it and we submit on that basis that this court should affirm the bar orders here because they protect the receivership estate and its assets the opposing party says well there are no assets well that's not quite right there's something like nine million dollars left right now but at the time this was all decided there were many more millions of dollars that had not been distributed so the receivership wasn't insolvent there was money there that mr peterson was trying to go after through chicago title so the idea that there wasn't anything that anyone was going to pursue i said respectfully submit is not true unless the court has anything else i would like to submit thank you thank you mr fates yeah all right you're going to be talking fast because you only have five minutes i will do my best good uh i'll be speaking about the distribution order and there are three main reasons that the distribution order can i interrupt you before you launch into the merits reasons on the jurisdiction question i don't understand i don't understand the briefing to be challenging our jurisdiction but of course we have our own duty to assure ourselves of jurisdiction so why is the distribution order appealable i heard your question on that i and i don't know the answer i'm going to be i'm going to admit that um it's just to support that there's a seventh circuit case that says it's not appealable there's a fifth circuit case that says that and there's probably a ninth circuit case american principle that says that i think when we looked at this appeal and we we saw that the distribution order resolves the claims made by the peterson parties as to this receivership and whether they would be allowed to participate in any distribution of receivership estate funds and we considered that i guess in perhaps incorrectly to be a final ruling on that discrete issue um but perhaps the case law goes the other way perhaps because there's estate funds still to be distributed that that isn't a final order i don't know the answer to that question it doesn't seem to be a final order as to the distribution but there are procedures as a rule in which the party can ask the district court to certify that it's finalized that particular party and then it could be appealed hence rule 54 and that was not done here um so perhaps another reason why this court may lack jurisdiction um but i will get to the merits of uh the claims and why the district court correctly uh denied them specifically uh the court correctly found that mr peterson was more intimately involved in the ponzi scheme than other investors and that set him in a different position vis-a-vis this ponzi scheme than the other investors who were making claims second his claims were duplicate of the investor claims they're making both parties are making claims for the exact same losses the investors who put their their funds into the scheme and then peterson essentially saying i'm liable to those investors because they lost money and so i'm making a claim for those same losses based on my potential liability to those investors so the district court had to weigh the two sets of claims for the same exact losses and allow one disallow the other which the court carefully did and the third reason is at this point there is no mathematical way in which the peterson parties could establish a claim against the receivership estate it is an undisputed fact that they received and retained over 12 million dollars from the ponzi scheme and its participants at this stage the investors that they are claiming the losses form the basis for their claim those investors have been compensated through the settlements and through the distributions from the receivership and their remaining losses are only about 1.6 million dollars so even if you were to accept a claim that they're the proper claimants for this 1.6 million dollars of losses all that would do would take a little bit off the total of gains that the peterson parties received from this ponzi scheme and there would never be a money in money out net loss that the peterson parties could ever establish they would still be a net gainer they would still be a net a net winner that's correct going back to the the first point about more intimately involved the court carefully looked at the facts the documents the testimony here they gave the peterson parties the opportunity to brief this twice and submit evidence twice and they and the judge carefully looked at these facts not did mr peterson have knowledge but what was his relationship to the ponzi scheme did he promote the ponzi scheme did he seek investor funds to be brought into the ponzi scheme how much money did he raise how much money had he received in commissions and referral fees those are the facts that the judge looked at and relied on in determining that mr peterson was more intimately involved with this ponzi scheme and in a very different position than the other investors and that is again a proper basis on which to distinguish and deny his claims i'll submit thank you all right missing you have 115 i wonder if we could do some math for lawyers and round up to two minutes okay i'll dispense with the distribution order um claim by saying to the extent that i'm losing the jurisdictional battle if that's the case there's just two points i think i need to make there was no allegation or evidence or testimony about promoting recruiting the scheme he was absolved of knowing anything about the scheme to the extent that there were business relationships it presumes knowledge to say that that relationship creates insider status if you don't know that you are entering into a fraudulent contract you're not guilty of being in fraud that said second point order is if this court decides it lacks jurisdiction over the distribution order appeal then there is nothing before this court in the record about insider status that was an argument that was made by the receiver only with respect to denial of claims in the distribution order motion that was a finding that was made only with respect to the distribution order denial or affirmance and so if that's the case if this court lacks jurisdiction then there's nothing in the record there wouldn't have been nothing in the record before this court about the will concede the tolling agreements are not in the record i take full responsibility that is something that we cannot explain other than i can represent as an officer of the court i have seen them i have read them and proof that they exist are the claims that have already been brought that the receiver is actually pursuing as they just said in the clawback action so the fact that the receiver had to get an assignment of that claim from cal private in order to bring it to the clawback action to me is persuasive that that is not a claim that belonged to the receivership estate had no standing to bring it this is something the receiver stated repeatedly the district court agreed and found that the claims were different they're not the same and therefore that alone should stop it i know i'm running out of time so i'll just wrap up by saying there's only one thing that this bar order does it protects chicago title a core participant in the scheme and so for that reason and for all the reasons articulated in our briefs and today we respectfully ask that you reverse thank you for your indulgence in giving me more time your honor thank you counsel thank you all for the arguments this afternoon they're very helpful and we are in recess until tomorrow morning all rise this court for this session stands adjourned
judges: Ebel, BADE, FORREST